IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01913-REB-NRN

UNITED STATES OF AMERICA,

Plaintiff,

v.

THE DURANGO & SILVERTON NARROW GAUGE RAILROAD COMPANY,
a Colorado Corporation, and
AMERICAN HERITAGE RAILWAYS, INC., a Florida Corporation,

Defendants.

---

**ORDER ON DISCOVERY DISPUTE RELATING TO ADEQUACY OF DEFENDANTS'
EXPERT DISCLOSURES (ARGUED SEPTEMBER 22, 2020)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

**Background**

This matter came before the Court on a discovery dispute relating to the

adequacy of Defendants' expert disclosures. Following my practice standards, the

Parties submitted their Joint Statement Regarding Discovery Dispute via e-mail. I heard

argument on September 22, 2020. The Joint Statement is attached to the minutes of the

argument at Dkt. #107-1. Associated exhibits attached to the Joint Statement and can

be found in the Record at Dkt. ##107-2, 3, and 4.

This case arises from a destructive wildfire, called the 416 Fire, that occurred

near Durango, Colorado. The United States alleges that the Defendant Railroads' (the

"Railroads") steam-powered locomotive was the cause of the fire. The United States

seeks damages for destruction of the National Forest from the fire and also damages from the cost of fighting the fire.

This discovery dispute arises from the United States' argument that the Railroads' expert disclosures under Rule 26(a)(2)(C) are inadequate. Specifically, the United States complains that the disclosures relating to General Manager John Harper and Assistant to the General Manager Matthew Cunningham merely characterize the anticipated topics of their testimony but fail to recite the specific facts and opinions to which the witnesses are expected to testify. In addition, the United States objects that, because of the nature of Mr. Cunningham's anticipated expert testimony, he is the functional equivalent of a "retained or specially employed" expert witness who should be required to provide a formal expert report and the other materials specified under Rule 26(a)(2)(B).

The difference between a retained expert and a non-retained expert is that for a non-retained expert the disclosure need include only a summary of the facts and opinions to which the witness is expected to testify, while an expert witness who is retained or specially employed to provide expert testimony is required to provide a formal report that must contain, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them"; "the facts or data considered by the witness in forming them"; and "any exhibits that will be used to summarize or support them." *See* Rule 26(a)(2)(B)(i)–(iii).

The prejudice to the United States of an inadequate Railroads expert disclosure is that the United States cannot fairly prepare to rebut the expert testimony. But there is danger to the Defendant Railroads as well. Under Rule 37(c)(1), if a party fails to

provide information or identify a witness as required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial . . . ." In other words, a party who makes only an inadequate or partial expert disclosure risks not being able to use the expert at all. *See* Wright, Miller and Marcus*,* 8A *Federal Practice and Procedure*, § 2031.1 (2010) (explaining "that courts have frequently excluded proffered expert testimony under this rule, most often in connection with trial, but also on motions for summary judgment") (footnotes omitted). Thus, it is in both Parties' respective interests that the expert disclosure (whether for a retained or non-retained expert) be sufficiently robust so that there is no debate as to whether the opinions and bases for the opinions to be offered at trial were sufficiently disclosed. I do note that, at trial, an expert is not limited to reading her report from the witness stand and "reasonable elaboration and explanation is expected and appropriate." *Id.* Nevertheless, the more comprehensive the summary or report, the better for all involved.

**The Adequacy of the Harper Disclosure**

Turning to the adequacy of the disclosures at issue here, although I stated during oral argument that I founds aspects of the Harper and Cunningham disclosures inadequate, a closer of review of the Harper disclosure convinces me that, despite certain loose language that is couched in generalities, for the most part, the Harper disclosure satisfies the requirements of the Rule because it does describe the facts and opinions to which Mr. Harper is expected to testify.

The caselaw on what constitutes an adequate disclosure for a non-retained expert (one who is not required to provide a written report) is not extensive. In *Acevedo*

*v. NCL (Bahamas) Ltd.*, 317 F. Supp. 3d 1188 (S.D. Fla. 2017), the plaintiffs had provided a bullet point list of topics that treating physicians were to testify about but failed to "provide any information regarding the opinions of the experts with respect to the topic of the costs of past and future medical care." *Id.* at 1198. This was found to be inadequate. The touchstone used in the *Acevedo* case to determine the adequacy of the disclosure for non-retained experts is that "[t]he expert disclosure rule is intended to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *Id.* (quoting *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008)). *See also Green Warth Wellness Ctr. LLC v. Attain Specialty Ins. Co.*, No. 13-cv-03452-MSK-NYW, 2016 WL 632051, at *3 (D. Colo. Feb. 17, 2016) ("Rule 26(a)(2)(C) disclosures are meant to define the scope of expert testimony so that an opposing party can be prepared to address the opinions offered."); *Cook v. Rockwell Int'l Corp.*, 580 F.Supp.2d 1071, 1122 (D. Colo. 2006) ("The purpose of Rule 26(a)(2)'s expert disclosure requirements is to eliminate surprise and provide the opposing party with enough information regarding the expert's opinions and methodology to prepare efficiently for deposition, any pretrial motions and trial.").

Using this prism through which to assess the sufficiency of the Harper disclosure, I do find that it is generally adequate and in compliance with Rule 26(a)(2)(C)(i) and (ii). The disclosure includes details regarding Mr. Harper's background that qualifies him as an expert.[1] It also lists the various topics on which he may testify, including train

---

[1] Including that he has worked for the railroad since 2005 while in high school, has held a variety of positions, and held a position in management since 2014.

operations; the installation, use, and purpose for various pieces of equipment on steam locomotives such as stack screens, smoke stacks, and stack sprayers; mitigation on the Railroads' right-of-way (including specifically in the origin area of the 416 Fire); the fire-fighting capabilities of the Railroads' operation; preventative policies that have been put in place by the Railroads, including fire-fighting trained maintenance-of-way crews; the use of gang cars, water wagons, and "pop" cars equipped with fire-fighting equipment; and the use of helicopter services. The disclosure also reveals that in connection with the specific locomotive alleged to have caused the 416 Fire, Mr. Harper may reference the condition of the stack screen on the date of the fire. It is also disclosed that Harper may testify regarding the differences among coal, oil, and diesel-powered locomotives, and restrictions and limitations regarding the use of oil and diesel-powered engines on the Railroads' Durango and Silverton line.

The United States complains that the Harper disclosure notes generally the various topics about which he will be expected to testify without describing the opinions that he will offer and the facts to which he will testify. But under Rule 26(a)(2)(C)(i), the "subject matter on which the witness is expected to present evidence" is to be disclosed. Listing the topics of the expected testimony is therefore a necessary part of the disclosure requirement, and the Harper disclosure does just that. As to the summary of the "facts and opinions" to which Mr. Harper is expected to testify, I find that the fourth paragraph of the Harper disclosure is sufficient in that it summarizes Mr. Harper's opinion that the Railroads' use of the various fire-prevention mechanisms, such as stack screens, smoke stack, and stack sprayers, on the subject locomotive "not only met, but

exceed, the industry standards for operation of coal-fired locomotives."[2] Mr. Harper will say the same about the use of gang cars, water wagons, and "pop" cars manned by trained crew members, along with the use of helicopter services to assist in the spotting and addressing fires. He also will testify that in his opinion, the presence of black, rock-like objects and particles near the location of the presumed start of the 416 Fire is not unexpected given that the Railroads have been running along the line for more than 100 years, a significant portion of which screens and mesh were not used on the smoke stacks. "The disclosure of specific opinions is necessary to provide defendants with sufficient notice to prepare for trial." *Carbajal v. Lucio, N*o. 10-cv-02862-PAB-KLM, 2016 WL 7335475, at *2 (D. Colo. Dec. 16, 2016). The fourth paragraph of the Harper disclosure provides the specific opinions to which Mr. Harper will testify at trial. Thus, I conclude that this paragraph sufficiently provides an adequate summary of the opinions to which Mr. Harper will testify and the facts supporting those opinions. As to Mr. Harper, the United States is sufficiently on notice of the opinions and the facts supporting those opinions to prepare for cross-examination and trial.

That said, I do take issue with the final paragraph of Mr. Harper's disclosure, where the Railroads note that Mr. Harper was deposed as a Rule 30(b)(6) witness in the associated state court case. He was also interviewed by the U.S. Forest Service. Via the final paragraph, the Railroads seek to incorporate by reference into the disclosure

---

[2] The Court recognizes that there may be a dispute as to the admissibility of such testimony where, based on the law of the case, the issues of the negligence of the Railroads and comparative negligence of the U.S. Forest Service are arguably no longer in the case as part of the inquiry into liability. But the issue of admissibility or relevance of this proposed expert testimony is separate and apart from the question of the adequacy of disclosure, which is what this discovery dispute is about. Relevance and admissibility presumably will be decided by the trial judge.

any "opinions that he has expressed during the deposition he has given to date," "any subsequent depositions that he may provide," and "any opinions he has expressed in the [Forest Service] interview." Such incorporation by reference is not a proper disclosure. Just as judges are not "like pigs, hunting for truffles buried in briefs," *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991), neither should opposing counsel have to rummage, pig-like, through prior (or future) depositions and interview reports, trying to locate and decipher supposed expert opinions that may or may not be offered at trial. If there are other opinions that Mr. Harper intends to offer beyond what is summarized in the fourth paragraph of the existing expert disclosure, then the Railroads need to identify and summarize such opinions in a supplemental disclosure. *See Carbajal*, 2016 WL 7335475, at *2 (explaining that for a non-retained expert "citations to the record, deposition testimony, or other materials without a clear indication of what sections will be used or how the facts or opinions will be framed and presented in testimony" do not satisfy expert disclosure requirements).

**The Adequacy of the Cunningham Disclosure**

As to the designation of witness Matthew Cunningham, the question is slightly different. Mr. Cunningham is the Assistant to the General Manager of Defendant Durango & Silverton Narrow Gauge Railroad Company ("D&SNGRC"). He was serving in that role at the time of the start of the 416 Fire. He is a fact witness in that he has general knowledge concerning railroad operations. In addition, according to the disclosure, Mr. Cunningham "may provide expert testimony regarding railroad operations and standard of care in the industry for the operation of railroads such as the D&SNGRC, safety measures and devices, including how they function, implemented by

7

the D&SNGRC to mitigate potential fire risks and hazards." Many of the listed topics are

similar to the anticipated testimony of Mr. Harper.

Of specific concern to the United States with respect to Mr. Cunningham, the

disclosure suggests Mr. Cunningham will testify about his own investigation into the

cause of the 416 Fire. As described in the disclosure, Mr. Cunningham is expected to

testify,

> concerning his investigation following the 416 Fire, including his visit to the
> general area of origin, his review of witness statements and deposition
> testimony and observations regarding evidence of human activity in the
> general area of origin, his review of expert reports issued in the mater by
> the [State Case] Plaintiffs' experts Rice and Steensland, his review of the
> Cause and Origin Report issued by the federal government, and his
> knowledge and understanding of the standards and procedures applicable
> to fire investigations, including PMS 412, Guide to Wildland Fire Origin
> and Cause Determination, and his knowledge and understanding of 'Fire
> Losses Locomotive Sparks,' . . . as it relates to the design, use and
> implementation of spark arrestors . . ..

(emphasis added). Mr. Cunningham also is expected to "testify concerning the origin

and cause of the 416 Fire, as it relates to the investigation he performed following the

fire's ignition, his observation of multiple signs of human activity in and near the area of

ignition, his knowledge of previous fires that were alleged to have been started by the

D&SNGRC, and related matters." The disclosure then purports to "incorporate[] by

reference" sixteen separate passages from Mr. Cunningham's deposition, one of which

appears to be more than 20 pages long.

Beyond the general concern that Mr. Cunningham's disclosure only identifies the

general topics of his anticipated expert testimony without identifying the specific facts

and opinions he intended to offer, the United States insists that because of the nature of

his anticipated testimony, which involves opinions based on a specific investigation

regarding the origin of the fire, including a review of other expert reports and deposition testimony in the case, Mr. Cunningham's anticipated testimony is more like that of a retained expert who, under Rule 26(a)(2)(B), should be required to provide a written report.

Technically, Mr. Cunningham does not fit either of the literal definitions under Rule 26(a)(2)(B) for the kind of expert who must provide a written report. As far as I can tell from the briefing, his duties as a D&SNGRC employee do not "regularly involve giving expert testimony." And as he was already employed by D&SNGRC, Mr. Cunningham was not "retained or specially employed to provide expert testimony in the case." In other words, he was not hired specially to conduct an investigation and give expert testimony in this lawsuit. But the law appears to be that whether an expert is required to give a written report under Rule 26(a)(2)(B) depends on "the substance and/or scope of his testimony," not on the specific employment status of the witness. *Scholl v. Pateder*, No. 09-cv-02959-PAB-KLM, 2011 WL 2473284, at *3 (D. Colo. June 22, 2011). *See also Wreath v. Kansas*, 161 F.R.D. 448, 450 (D. Kan. 1995) ("The determinative issue is the scope of the proposed testimony.").

The *Scholl* case involved treating physicians who were designated to provide expert testimony. Because the opinions they intended to present at trial expanded beyond the opinions they had developed as a necessary part of the patient's treatment, it was held that they were required to prepare a written report. One of the doctors in *Scholl* was going to be testifying about other doctors' opinions. It was held that if a proposed expert treating physician is testifying about another doctor's opinions, then the doctor (treating physician or not) is acting as a retained expert witness. *Scholl,* 2011 WL

2473284, at *4. *See also Wreath*, 161 F.R.D. at 450 ("For example, a treating physician requested to review medical records of another health care provider in order to render opinion testimony concerning the appropriateness of the care and treatment of that provider would be specially retained notwithstanding that he also happens to be the treating physician.").

Here, Mr. Cunningham apparently did his own investigation and reached certain conclusions about the cause and origin of the 416 Fire. In so doing, he analyzed, assessed, or incorporated the expert witness reports provided in the associated state case and a report issued by the United States. He reviewed witness statements and deposition testimony. Therefore, the opinions he intends to offer at trial are not opinions formed based on his own personal factual observations made in the course of his normal work for D&SNGRC. Review of depositions, witness statements, and expert reports falls outside the scope of Mr. Cunningham's regular duties as Executive Assistant to the General Manager. "[W]hen an individual exceeds the scope of his own personal knowledge and observation, that expert should propound a report pursuant to Rule 26(a)(2)(B)." *Alarid v. Biomet, Inc.*, No. 14-cv-02667-REB-NYW, 2015 WL 5833839, at *4 (D. Colo. Oct. 7, 2015). Instead of proposing to testify only about what he saw and concluded based on his day-to-day work at D&SNGRC, Mr. Cunningham apparently formulated his opinions by reviewing depositions and expert reports—the kind of work normally done by a retained expert "specially employed to provide expert testimony in the case." *See* Rule 26(a)(2)(B). For that reason, Mr. Cunningham will be required to provide a formal expert report consistent with the provisions of Rule 26(a)(2)(B)(i)–(vi), which should include a "complete statement of all opinions the

witness will express and the basis and reasons for them." Incorporation by reference of his prior deposition testimony (even by reference to page numbers) is **not** adequate.

**Conclusion**

With respect to the Harper disclosure, it is adequate, and no supplementation is required unless Mr. Harper intends to offer opinions beyond those listed in the fourth paragraph of his disclosure. To the extent the disclosure seeks to incorporate by reference any other opinions from interviews or depositions Mr. Harper has previously given, the disclosure is not adequate, and supplementation will be required if Mr. Harper intends to offer such additional opinions at trial.

With respect to the Cunningham disclosure, it is inadequate because Mr. Cunningham qualifies as a witness "who must provide a written report" under Rule 26(a)(2)(B). Therefore, the Cunningham disclosure must be supplemented by the provision of written report to include all the information required under Rule 26(a)(2)(B)(i)–(vi). Incorporation by reference of prior opinions given in deposition or in interviews is not sufficient.

Dated:    October 1, 2020  
           Denver, Colorado                 _____  
                                   N. Reid. Neureiter  
                                 United States Magistrate Judge